

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Leo J. Wise*
*Assistant United States Attorney*
*Leo.Wise@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4909*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

November 4, 2016

\_\_\_ FILED \_\_\_ ENTERED
\_\_\_ LOGGED \_\_\_ RECEIVED

NOV 17 2016

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

William B. Purpura
Purpura & Purpura Attorneys at Law
The Bonaparte Building
8 E. Mulberry Street
Baltimore, Maryland 21202

Re:   *United States v. Ramel Chase*, Cr. No. JKB 16-485

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by November 7, 2016, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty Count One of the indictment now pending against him charging him with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    First, that an enterprise existed as alleged in the indictment;

    Second, that the enterprise affected interstate or foreign commerce;

    Third, that the defendant was associated with or employed by the enterprise; and

    Fourth, that the defendant knowingly and willfully became a member of the conspiracy.

Revised 11/5/09

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: a 20 year term of incarceration, 3 years of supervised release and a fine of fine not more than twice gross proceeds derived from the offense. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

i. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and

3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a. Base Offense Level
      § 2E1.1(a)(1)                                                                       19

   b. Aggravating Role
      § 3B1.1 organizer, leader, manager or supervisor of criminal activity               2

                                                                          **Subtotal    21**

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office will make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The Defendant and this Office have reserved the right to argue for any factor under 18 U.S.C. 3553(a) that could take the sentence outside of the advisory guidelines range.

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence at the low end of the advisory sentencing guidelines range.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including any uncharged conduct.

## Collection of Financial Obligations

11. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

12. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

13. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

14. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed, including

the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised.

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

15. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

16. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the

presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

17. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Leo J. Wise
Robert R. Harding
Daniel C. Gardner
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

Nov. 17, 2016
Date

Ramel Chase

I am the Defendant's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

Nov. 17, 2016
Date

William Pupura, Esq.

8

## ATTACHMENT A
## STATEMENT OF FACTS

It is agreed and stipulated that were the Government to proceed to trial in this case, it would prove, beyond a reasonable doubt, by admissible testimonial and documentary evidence the guilt of the Defendant on the charge of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).

This Office and the Defendant understand, agree and stipulate to the following statement of facts and the Defendant acknowledges that it does not represent all the evidence the Government would have produced had the case proceeded to trial.

1. The Defendant was incarcerated at the Eastern Correctional Institution (ECI), a Maryland prison located near Westover, Maryland, on Maryland's Eastern Shore. ECI constituted an "enterprise", as defined in Title 18, United States Code, Section 1961 (4). ECI engaged in, and its activities affected, interstate commerce.

2. The defendant attempted to bribe CO Erin BURFIELD and bribed Robert WATERS and correctional officers to smuggle contraband into ECI.

3. Inside ECI, the defendant managed a contraband smuggling and distribution network that included the following individuals:

    a. Inmate MIDDLETON, who was in a romantic relationship with CO BURFIELD, arranged for BURFIELD to meet with individuals at CHASE's direction to obtain contraband.

    b. Inmate BAILEY distributed contraband for inmate CHASE, including narcotics.

    c. Inmate TIMMS, who was CHASE's cell mate, distributed contraband for inmate CHASE, including narcotics.

        i. NICOLE CARPENTER, TIMMS' girlfriend, facilitated his contraband trafficking by managing the illegal proceeds generated by the sales.

4. Further, the defendant sold contraband, including narcotics that was smuggled into ECI by CO Stephen WISE in exchange for bribes, with inmates Mark LANCE, Ternell LUCAS, Samuel JOHNSON and others.

5. Investigators received authorization to intercept calls and texts to and from a contraband cell phone used by inmates at ECI. Multiple calls were intercepted and recorded where the Defendant and others working with him and at his direction discussed contraband, arranging meetings with correctional officers and payments for

contraband from inmates and payments for contraband from suppliers. Examples are presented below:

a. On or about February 11, 2016, CARPENTER texted inmate CHASE: "so now u want me to give him the rest and cuz wanna how where u want the pills in wit the strips."

b. On or about February 13, 2016, inmate CHASE, using his contraband cell phone, called inmate MIDDLETON on his contraband cell phone and asked him to find out from a correctional officer how much she would charge to bring in a shipment of Suboxone and K2.

c. On or about February 16, 2016, inmates MIDDLETON and CHASE exchanged a series of text messages setting up a meeting between a correctional officer and a facilitator so that a correctional officer could bring K2 and Suboxone into ECI.

d. On or about February 17, 2016, inmate TIMMS sent CARPENTER a text message from CHASE's contraband cell phone with a message from a correctional officer about how CARPENTER should package contraband.

e. On or about February 20, 2016, inmates BAILEY and CHASE spoke to one another on their contraband cell phones and BAILEY and CHASE discussed how to package contraband for resale; BAILEY told CHASE that he made "50s" using Chaptsick tops.

f. On or about February 21, 2016, inmate CHASE, using his contraband cell phone, texted MIDDLETON, on his contraband cell phone, and told him he had just sold $500 worth of contraband.

g. On or about February 23, 2016, inmate BAILEY texted inmate CHASE, both using contraband cell phones, "how many strips you need" and CHASE responded, "FIFTY FOR THE STACK."

h. On or about March 1, 2016, inmate TIMMS called K.T. and told her, "I just talked to mom . . . . I did not know what she was talking about. I did not say nothing to her . . . . She was trying to say the cops are watching Nicky for money laundering. . . . I was like absolutely . . . ." to which K.T. responded, "[t]hey are questioning her with all that money that RaRa [RAMEL CHASE] sent her."

i. On or about March 2, inmate TIMMS called his mother from a contraband cell phone. His mother told TIMMS that she had mailed him a money order

10

that day and the two then discussed TIMMS contraband smuggling. TIMMS told her that his cell buddy CHASE had been selling K2 and tobacco for 16 years but that TIMMS "turned him onto the strip game" and that he now gets 100 strips at a time and TIMMS sells for him.

j.  On or about March 25, 2016, inmate CHASE using his contraband cell phone and CO BURFIELD exchanged a series of text messages about CO BURFIELD ~~aided~~ aiding the defendant in smuggling contraband into ECI.

6. From on or about November 8, 2015 to on or about November 14, 2015, inmate CHASE possessed with intent to distribute a quantity of a mixture or substance containing a detectable amount of buprenorphine, also known as Suboxone, a Schedule III controlled substance.

7. The defendant agrees that he associated with the enterprise described in the indictment and knowingly became a member of the conspiracy described in the indictment.